SINDEL, Appellee,

v.

EBCO MANUFACTURING COMPANY, INC., Appellant; Ohio
Bureau of Employment Compensation, Appellee.

[Cite as *Sindel v. EBCO Mfg. Co., Inc.* (1991), 71 Ohio App.3d 426.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1326.

Decided March 21, 1991.

*Handelman & Kilroy* and *Robert K. Handelman,* for appellee.

*Robbins, Preston, Beckett, Taylor & Gugle Co., L.P.A.*, and *John A. Sentz, Jr.*, for appellant.

*Lee I. Fisher*, Attorney General, and *James John Schubert*, for appellee Ohio Bureau of Employment Compensation.

---

McCORMAC, Judge.

Appellant, EBCO Manufacturing Company, Inc. ("EBCO"), appeals the judgment of the Franklin County Court of Common Pleas which reversed the prior determination of the Ohio Unemployment Compensation Board of Review ("board of review") as being against the manifest weight of the evidence. The board of review had determined that appellee, Jeffrey Sindel, was discharged by appellant for just cause and was, therefore, disqualified from receiving unemployment compensation benefits pursuant to R.C. 4141.-29(D)(2)(a). Appellant's single assignment of error states:

"The trial court committed prejudicial error in finding that the decision of the board of review was contrary to the manifest weight of the evidence."

Appellee worked as a hanger on a paint assembly line at EBCO for approximately eleven and one-half years before he was fired on March 22, 1988 for a violation of company work rules.

Until March 21, 1988, EBCO's first shift schedule required paint line employees to work from 7:00 a.m. until 3:30 p.m. There were only two paint line employees, including appellee, on the first shift. Customarily, the paint line was shut down at 3:25 p.m. so that the two paint line employees could use the remaining five minutes of their shift to wash up. Paint line employees were not otherwise permitted to leave their work station on the paint line unattended, particularly when the line was running. The second shift, instituted sometime in 1987, did not commence until 4:00 p.m.

EBCO changed its paint line shift schedules effective March 21, 1988. Thereafter, appellee and his co-worker were to commence working at 7:15 a.m. and to punch out at 3:45 p.m. The second shift was pushed back to begin at 3:45 p.m., which meant that the paint line would no longer be shut down between shifts. Thus, EBCO eliminated the five-minute paid cleanup time for first shift paint line employees so that the paint line would not be unattended while it was running. The schedule change was verbally communicated to appellee by his supervisor approximately one week before the change became effective. Nevertheless, appellee, as well as EBCO's witnesses, including appellee's supervisor, testified at the board of review hearing that appellee was never specifically informed prior to March 21, 1988 that the five-minute washup time had been eliminated.

On March 21, 1988, the first day of the new schedule, appellee arrived at work at 7:15 a.m. Pursuant to his previous practice, appellee quit working and began cleaning up at 3:40 p.m., while the line was still moving. Although appellee's co-worker testified that he reminded appellee that they were to remain on the line until 3:45 p.m., both the first and second shift supervisors testified that they said nothing to appellee when they saw him walk off the line five minutes early.

The next day appellee was fired from his job at EBCO. EBCO's supervisors testified at the board of review hearing that the reason given to appellee for his termination was his willful slowdown of work, which is a dischargeable offense pursuant to EBCO's employees' policy. Appellant's witness, Jeanne Clegg, further testified that appellee had received a final warning on November 10, 1986, after a disciplinary charge for dishonesty, that any further infraction of employee rules would result in his immediate discharge.

Appellee applied for unemployment compensation benefits. The Administrator of the Ohio Bureau of Employment Services denied appellee benefits pursuant to R.C. 4141.29, which states:

"(D) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits under the following conditions:

" * * *

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

"Just cause" was explained in *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 17, 19 OBR 12, 14, 482 N.E.2d 587, 589, as follows:

" 'There is * * * not a slide-rule definition of just cause. Essentially, each case must be considered upon its particular merits. Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.' * * * "

Upon appeal from the administrator's decision, the board of review initially determined that the administrator's denial of benefits was improper, and that appellee was discharged by EBCO without just cause. This order was based on the board's finding that appellee was not specifically advised that the five-minute washup time was eliminated with the new schedule. Upon reconsideration, the board of review reversed itself, finding that appellee was discharged for just cause. The board of review ultimately found just cause for appellee's termination from a combination of his previous disciplinary record and his leaving the line early on March 21, 1988 to wash up, which was found to be a

willful neglect in the performance of duties under published plant conduct rules. The board stated that appellee knew or should have known from the change in shift schedules that the five-minute washup time had been eliminated and that he was to remain at his work station until he was relieved by a second shift employee. Therefore, the board concluded that appellee's conduct constituted fault and was just cause for his termination.

Upon appeal, the common pleas court applied the test of R.C. 4141.28(O) and found that the manifest weight of the evidence before the board of review supported the referee's initial decision of August 11, 1988, that appellee did not willfully or knowingly violate a company rule because no one told him of the elimination of the five-minute washup time. The court said that appellee was, at most, negligent in leaving the paint line while it was still running. Thus, the court reversed the board's decision of August 4, 1989 and reinstated appellee's unemployment compensation benefits.

EBCO asserts that the trial court's finding was erroneous.

■ A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Hence, the issue is whether the board's final decision is supported by some evidence in the record. *Irvine, supra,* 19 Ohio St.3d at 18, 19 OBR at 15–16, 482 N.E.2d at 590–591. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the court's decision. *Id.*

■ Despite the deferential standard of review, we agree with the trial court that the record does not show any evidence that appellee knew that the five-minute washup period had been eliminated with the institution of the new paint line employees' schedule, and that unemployment compensation benefits were, therefore, improperly denied. No member of EBCO's management testified that he specifically told appellee that the longstanding practice of permitting a five-minute paint cleanup had been discontinued. Rather, the manifest weight of the testimony indicates that appellee misunderstood his supervisor's instructions and thought that his five-minute cleanup period had been pushed forward to 3:40 p.m. In *Coey v. Burwell Nurseries* (1965), 2 Ohio App.2d 102, 31 O.O.2d 163, 206 N.E.2d 577, we held that a misunderstanding between an employee and an employer is not just cause within the meaning of the unemployment compensation statutes. Without evidence of a deliberate and willful violation of a specific order, or established rule, there is not sufficient evidence to support a finding of just cause for appellee's termination. *Id.*

The record reveals that second shift employees were present and ready to begin work at 3:40 p.m. on March 21, 1988, and that two plant supervisors who saw appellee walk off the paint line and begin cleaning up at 3:40 p.m. on that day failed to tell him that he was expected to remain at his work station until 3:45 p.m. The only testimony that appellee willfully disregarded an employee rule came from his co-worker who testified that he heard appellee say he would do what he wanted, despite the co-worker's reminder that they were to remain on the line until 3:45 p.m. However, the co-worker testified that he was specifically told that the cleanup time had been eliminated. He stated that he was told individually. As previously indicated, there was no evidence that appellant had been given that same information. Had appellant produced evidence that appellee had been told that the five-minute cleanup period had been eliminated rather than leaving him to infer so, the result would be different and there would be some evidence of a willful violation. The co-worker was not a supervisor and he did not recall sufficient details to support a finding of willfulness on the part of appellee.

Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and HOOPER, JJ., concur.

JAMES J. HOOPER, J., retired, of the Miami County Court of Common Pleas, sitting by assignment.