BINGER, Appellee,

v.

**WHIRLPOOL CORPORATION et al., Appellants.**

[Cite as *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583.]

Court of Appeals of Ohio,
Sixth District, Sandusky County.

No. 92–CV–179.

Decided April 26, 1996.

*Melvin Saferstein,* for appellee.

*Robert M. Anspach Assoc., Mark D. Meeks* and *Catherine G. Hoolahan,* for appellant Whirlpool Corp.

*Betty D. Montgomery,* Attorney General, and *Mark S. Barnes,* Assistant Attorney General, for appellant Administrator.

---

ABOOD, Judge.

This is an administrative appeal from a judgment of the Sandusky County Court of Common Pleas which reversed the Ohio Unemployment Compensation Board of Review's determination and found that appellee Jacqueline Binger was not discharged by appellee Whirlpool Corporation, Inc. ("Whirlpool") for just cause.

On appeal appellant, the Administrator for the Ohio Board of Employment Services ("OBES"), sets forth the following assignment of error:

"The Sandusky Court of Common Pleas erred in reversing the decision of the Unemployment Compensation Board of Review and holding that said decision was unreasonable and against the manifest weight of the evidence."

In addition, Whirlpool sets forth the following four assignments of error:

"A. The trial court committed reversible error in disregarding and setting aside the evidentiary determinations and factual findings of the administrative agency.

"B. The trial court committed reversible error in finding that the decision of the administrative agency was not supported by competant [sic] credible evidence.

"C. The trial court committed reversible error in finding that the decision of the administrative agency was unreasonable and against the manifest weight of the evidence.

"D. The trial court committed reversible error in determining that Jacqueline Binger had been discharged without just cause."

The facts which are relevant to the issues raised on appeal are as follows. Appellee was hired by Whirlpool in June 1985, as an assembly line worker at its plant in Clyde, Ohio. Sometime in 1990, Whirlpool officials became aware of increasing drug use among its employees and, in cooperation with the Clyde Police Department, established an undercover investigation in which agents Clifford Mesnard and Jonathan Huffman posed as employees in an attempt to identify those individuals who were selling and/or using drugs at work.

As a result of the undercover investigation, appellee and thirty-six other employees were indicted by the Clyde Police Department on drug-related charges. Appellee was initially arrested and charged with one count of conspiracy to commit aggravated trafficking in cocaine, one count of offering to sell cocaine, and one count of drug abuse. She subsequently pled guilty to one count of offering to sell cocaine, in exchange for a dismissal of the two other charges.

On March 15, 1991, Whirlpool terminated appellee, and on March 19, 1991, she applied for unemployment compensation.

On March 20, 1991, OBES issued a decision in which it allowed appellee's claim for benefits, after finding that her "layoff was not for misconduct in connection with the work." On April 10, 1991, Whirlpool filed a written request for reconsideration, in which it asserted that appellee was discharged, along with other employees, for violating "a known company policy." In support thereof, Whirlpool argued that it distributes an employee policy manual to all of its employees and that Appendix D of the manual, which relates to "plant rules," states that the following acts are violations of company policy:

"3. Reporting to work while under the influence of narcotic or controlled substances, use of and/or possession of same on Company property.

" * * *

"8. Immoral conduct or indecency."

Whirlpool further argued that other employees who were terminated along with appellee as a result of the same drug investigation were not allowed unemployment compensation and stated that "if others are disqualified, this claimant should also be."

On June 27, 1991, OBES issued an "Administrator's Reconsideration Decision" in which it found that "the evidence is clear that claimant was discharged for just cause in connection with the work" and disallowed her claim for unemployment benefits. On July 12, 1991, appellee appealed the administrator's decision to the Ohio Unemployment Compensation Board of Review ("board").

On October 22, 1991, an administrative review hearing was held before referee Barbara Thompson, at which testimony was presented by appellee and Gregory Frisch, Whirlpool's Employee Relations Coordinator.

At that hearing Frisch testified that it is against Whirlpool's policy for an employee to use or possess drugs on company property or engage in immoral or indecent conduct, that the policy exists because Whirlpool is "concerned about the safety and well-being of [its] employees," that appellee received a written copy of the policy in February 1990, that discipline for any violation of company rules is based on the severity of that incident, and that an internal review board handles such disciplinary matters on a case-by-case basis. He further testified that Whirlpool began its undercover investigation of employee drug use because it had numerous reports of an "excessive amount of drugs" at the Clyde plant, that appellee was targeted in the investigation by undercover agent Mesnard, that appellee and Mesnard discussed obtaining drugs at work on at least three occasions and that those conversations were tape-recorded by Mesnard, that Mesnard and Huffman submitted written reports to the company's disciplinary review board on a monthly basis and that Mesnard submitted three reports which were specifically based on the recorded conversations with appellee, and that the Clyde police charged appellee with three drug-related offenses as a result of Mesnard's investigation.

At the conclusion of Frisch's testimony, the referee admitted copies of Mesnard's reports concerning appellee into evidence, over appellee's objection, stating that since they were hearsay she would "give them the weight they deserve."

In her testimony, appellee admitted on direct examination by the referee that she had been charged with one count of offering to sell cocaine at work but that

that and another charge had been dismissed when she pled guilty to offering to sell cocaine to Mesnard at the Vickery Tavern, and that she had heard the tapes of her conversations with Mesnard and agreed that they basically contain the same information as the written reports. She further testified that Mesnard approached her at work on several occasions to ask for drugs, that she gave him her home phone number so he could call her after work, and that when Mesnard called her on June 15, 1991, she put him in touch with Sue Perkins, who is not a Whirlpool employee, who then sold him one gram of cocaine at the Vickery Tavern.

Appellee further testified that Mesnard frequently came to her at work to ask about cocaine and that she always said no, that she never offered, sold or used cocaine at work, and that she received no profit from Perkins's sale of cocaine to Mesnard.

On December 31, 1991, the referee filed a decision in which she found that (a) Mesnard's reports, when considered along with Frisch's testimony and appellee's conviction for offering to sell cocaine, were more credible than appellee's denial that she violated company policy; (b) appellee "[made] plans on company property, while she was on the clock, for the commission of a crime * * * in complete disregard of her employer's interests"; and (c) she was discharged "by Whirlpool Corporation for just cause in connection with work." Accordingly, the referee affirmed the administrator's decision denying appellee's claim for unemployment compensation.

On February 20, 1992, the board denied appellee's request for further reconsideration of the referee's decision and on March 4, 1992, appellee filed a "Notice of Appeal from Administrator's Decision" in the Sandusky County Court of Common Pleas.

On appeal, the case was submitted to the court of common pleas on the record of the administrative proceedings, which included a transcript of the October 21, 1991 hearing before the referee, and the parties' briefs. On July 5, 1995, the trial court filed a judgment entry in which it found:

"Although there were supposedly 3 instances when appellant was involved in drug transactions, only one was supuported [sic] by any credible evidence, her plea of guilty; the other 2 were denied by appellant, and were supported only by the weakest of hearsay."

The trial court ultimately reversed the board's decision, stating that "an ordinarily intelligent person would not believe that assisting another person to make a connection to buy drugs, when all of the activities leading to such

transaction occurred off the company premises, would lead to dismissal from employment."

On July 6, 1995, and August 4, 1995, respectively, Whirlpool and OBES filed timely notices of appeal. On September 7, 1995, the two cases were consolidated for purposes of this appeal.

OBES asserts in its sole assignment of error that the trial court erred when it found that the board's decision to deny appellee's claim for unemployment compensation was "unlawful, unreasonable, and against the manifest weight of the evidence." In support thereof, OBES argues that (1) appellee was discharged from employment for just cause; (2) there was a sufficient "nexus" between appellee's illegal conduct and her work to constitute just cause for her termination; (3) appellee's knowing violation of a lawful work rule, standing alone, constitutes just cause for her termination; (4) the referee properly considered hearsay evidence in determining that appellee was terminated for just cause; and (5) the trial court erred when it substituted its own findings of fact for those of the referee.

In its four assignments of error, Whirlpool asserts that the trial court erred by (1) setting aside the referee's findings and evidentiary determinations, (2) stating that Mesnard's reports were inadmissible hearsay and finding that the referee's decision, without the reports, was not supported by competent, credible evidence, (3) finding that the referee's decision was unreasonable and against the manifest weight of the evidence, and (4) concluding that appellee was discharged by Whirlpool without just cause.

R.C. 4141.28(O)(1) states:

"Any interested party * * *, within thirty days after notice of the decision of the board * * * may appeal from the decision of the board to the court of common pleas * * *. If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. Any interested party shall have the right to appeal from the decision of the court as in civil cases."

The Supreme Court of Ohio recently held that R.C. 4141.28(O)(1) "does not create distinctions between the scope of review of common pleas courts and appellate courts. To apply the same standard at each appellate level does not result in a *de novo* review standard." *Tzangas, Plakas & Mannos v. Admr.,*

*Ohio Bur. of Emp. Svcs.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207, 1210.

Consequently, the board's role as a fact finder remains intact, and "a reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Id.* at 697, 653 N.E.2d at 1210, citing *Irvine v. Unemp. Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587. A board's final decision may not be reversed as against the manifest weight of the evidence if it "is supported by some evidence in the record. * * * The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the court's decision." *Sindel v. EBCO Mfg. Co., Inc.* (1991), 71 Ohio App.3d 426, 429, 594 N.E.2d 77, 79, citing *Irvine, supra,* 19 Ohio St.3d at 18, 19 OBR at 15, 482 N.E.2d at 590.

In conducting a hearing pursuant to R.C. 4141.28(O)(1), "the board and the referees are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure. The board and the referees shall take any steps in the hearings, consistent with the impartial discharge of their duties, which appear reasonable and necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law." R.C. 4141.28(J).

■ Evidence admitted into the record by a referee "which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account in [administrative] proceedings * * * where relaxed rules of evidence are applied." *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St.2d 41, 44, 23 O.O.3d 57, 59, 430 N.E.2d 468, 470; *Nordonia Hills City School Dist. Bd. of Edn. v. Unemp. Comp. Bd. of Review* (1983), 11 Ohio App.3d 189, 11 OBR 283, 463 N.E.2d 1276. Accordingly, a referee's finding that an employee was or was not terminated for just cause is lawful so long as such evidence is given its proper weight. *Campion v. Ohio Bur. of Emp. Serv.* (1990), 62 Ohio App.3d 897, 577 N.E.2d 741.

■ On appeal, a reviewing court must look at all the evidence contained in the record "without attempting to weed out and disregard that evidence which would likely be inadmissible in a courtroom setting," and may not substitute its own judgment for that of the referee in considering whether a board's "just cause" determination was "unlawful, unreasonable, or against the weight of the evidence." *Simon, supra,* 69 Ohio St.2d at 45, 23 O.O.3d at 60, 430 N.E.2d at 471; *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 161, 11 OBR 242, 243, 463 N.E.2d 1280, 1282.

Pursuant to R.C. 4141.29(D), an individual does not qualify to receive unemployment compensation:

"(2) For the duration of his unemployment if the administrator finds that:

"(a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *."

■ "Just cause" has been defined as "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine,* 19 Ohio St.3d at 17, 19 OBR at 14, 482 N.E.2d at 589. It is well established that "fault is essential to the unique chemistry of a just cause termination," *Tzangas, supra,* 73 Ohio St.3d at 698, 653 N.E.2d at 1211, and that "the critical issue is not whether an employee has technically violated some company rule, but rather whether the employee, by his [or her] actions, demonstrated an unreasonable disregard for his employer's best interests." *Kiikka v. Ohio Bur. of Emp. Serv.* (1985), 21 Ohio App.3d 168, 169, 21 OBR 178, 180, 486 N.E.2d 1233, 1234.

■ This court has reviewed the entire record of administrative proceedings which was before the trial court and, upon consideration thereof and the law, finds that the referee's determination that appellee was discharged for just cause was not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, appellants' five assignments of error are well taken.

On consideration whereof, this court finds further that substantial justice has not been done the party complaining; the judgment of the Sandusky County Court of Common Pleas is hereby reversed, and the decision of the Ohio Unemployment Compensation Board of Review is reinstated. Court costs of these proceedings are assessed to appellee.

*Judgment reversed.*

MELVIN L. RESNICK, P.J., and GLASSER, J., concur.