OPINION
This timely appeal arises from the decision of the Columbiana County Court of Common Pleas to reverse the decision of the Ohio Unemployment Compensation Board of Review. For the following reasons, we reverse the decision of the trial court and reinstate the decision of the Unemployment Compensation Board of Review.
Appellee, Steven R. Rhodes, began working for Appellant, Ohio Turnpike Commission (hereinafter OTC) on June 9, 1977. On January 28, 1997, Appellee was discharged following a third violation of the OTC Drug and Alcohol Testing Policy. Appellee then sought unemployment compensation benefits from Appellant, Ohio Bureau of Employment Services (hereinafter OBES). OBES denied Appellee's initial request as well as Appellee's subsequent request for reconsideration.
On July 11, 1997, Appellee appealed to the Ohio Unemployment Compensation Board of Review. (Hereinafter, Board of Review.) A telephone hearing was held on September 4, 1997, following which the Board of Review issued a decision affirming the determination of OBES that Appellee was not entitled to unemployment compensation benefits.
On December 5, 1997, Appellee filed an administrative appeal in the Columbiana Court of Common Pleas pursuant to R.C. §4141.28(O). In a journal entry dated June 10, 1998, the trial court reversed the decision of the Board of Review and held that Appellee was entitled to unemployment compensation benefits. The trial court concluded that the initial random drug testing of Appellee was in violation of his collective bargaining agreement which provided for such random testing only of employees in "safety sensitive" positions and of those involved in accidents. Specifically, the trial court noted that there was no substantial credible evidence that Appellee held a position that impacted the safety of the public. The trial court also concluded that since the initial positive drug test was unlawful, any follow-up tests were the "fruit of the poisonous tree" and therefore results from those tests, including the test resulting in Appellee's termination, were illegally obtained and improperly considered by the Board of Review. The court further stated that evidence to support the termination of unemployment compensation should be credible and that credibility can not be determined at a telephone hearing.
OBES and OTC each filed notices of appeal raising similar assignments of error. OBES raises the following three assignments of error:
 "I. WHERE FACTUAL DETERMINATIONS ARE RESERVED FOR THE OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION AND THE ADMINISTRATIVE RECORD CONTAINS CREDIBLE EVIDENCE TO SUPPORT THE REVIEW COMMISSION'S FINDING THAT CLAIMANT WAS A SAFETY-SENSITIVE EMPLOYEE IT WAS CONTRARY TO THE STANDARD OF REVIEW FOR THE COLUMBIANA COUNTY COMMON PLEAS COURT TO MAKE THE FACTUAL DETERMINATION THAT CLAIMANT WAS NOT A SAFETY-SENSITIVE EMPLOYEE."
 "II. THE COLUMBIANA COUNTY COMMON PLEAS COURT RULED CONTRARY TO THE STATUTORY STANDARD OF REVIEW, OHIO LAW AND POLICY, WHEN IT AWARDED UNEMPLOYMENT BENEFITS TO A SAFETY-SENSITIVE EMPLOYEE OF THE OHIO TURNPIKE COMMISSION, WHO ADMITTED TO USING COCAINE AND FAILED A DRUG TEST THREE TIMES, IN VIOLATION OF THE OHIO TURNPIKE COMMISSION'S DRUG-FREE POLICY."
 "III. IT WAS ERRONEOUS FOR THE COLUMBIANA COUNTY COMMON PLEAS COURT TO REVERSE THE DENIAL OF UNEMPLOYMENT BENEFITS ON THE ASSUMPTION CREDIBILITY CANNOT BE DETERMINED IN A TELEPHONE HEARING."
In addition, Appellant OTC raises the following assignments of error:
 "I. THE TRIAL COURT ERRED IN HOLDING THE BOARD OF REVIEW'S FINDING THAT CLAIMANT PERFORMED A SAFETY SENSITIVE FUNCTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "II. THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFF IS ENTITLED TO UNEMPLOYMENT COMPENSATION ABSENT A FINDING THAT HE REPORTED TO WORK UNDER THE INFLUENCE OF COCAINE."
 "III. THE TRIAL COURT ERRED IN HOLDING THE DRUG TESTING WAS UNLAWFUL BECAUSE CLAIMANT CONSENTED TO EACH AND EVERY POSITIVE DRUG TEST BEFORE IT WAS ADMINISTERED."
All of Appellants' assignments of error essentially allege that the trial court erred in its application of the proper standard of review and that its decision was against the manifest weight of the evidence. As such, we will address the assignments of error collectively.
Reviewing courts may reverse on an administrative appeal the Unemployment Compensation Board of Review's just cause determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos v.Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696-97. What constitutes just cause is a question of fact and determination of purely factual questions is primarily within the province of the Board of Review. Irvine v. Unemployment Comp. Bd. of Review
(1985), 19 Ohio St.3d 15, 17. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. Id., 18. While in an administrative appeal courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by evidence in the record. Id. As this court recently noted, in unemployment cases we will not review a trial court's decision under an abuse of discretion standard, but rather, we review the decision of the board using the same standard as must be used by the trial court.Laukert v. Ohio Valley Hosp. Assn. (1996), 115 Ohio App.3d 168,171-172. In addition, a board's final decision may not be reversed as against the manifest weight of the evidence if it is supported by some evidence in the record. Binger v. WhirlpoolCorp. (1996), 110 Ohio App.3d 583, 589. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision. Irvine, supra, 18.
According to R.C. § 4141.29(D)(2)(a), an individual is not eligible for unemployment benefits if he has been discharged for just cause in connection with his work. "Traditionally, just cause, in a statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Tzangas, supra, 697 citing Irvine,supra, 17. Moreover, a just cause determination must be consistent with the purpose of the Unemployment Compensation Act.Tzangas, 697.
 "`The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' * * *
 "The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.
 "While this court did hold * * * that `[t]he determination of whether just cause exists necessarily depends upon the unique factual considerations of the particular case,' * * * that does not compel the appellate court's abandonment of fault-based just cause analysis in favor of a `totality of the circumstances' examination. Instead, * * * the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination."
Tzangas, 697-698. (citations omitted.)
While it is clear that the aim of a just cause hearing is to determine an individual's fault for his termination, we also note that in reaching its decision, the Board of Review is not bound by the terms of collective bargaining agreements or by decisions arrived at pursuant to such agreements. Quarto Mining Co. v.Adams (December 21, 1988) Monroe App. No. 777, unreported, 3, citing Youghiogheny Ohio Coal Co. v. Oszust (1986), 23 Ohio St.3d 39
. Furthermore, the Board of Review is not bound by, "* * * stringent rules in determining the admissibility of evidence into the record * * *" when determining an individual's entitlement to unemployment benefits. Simon v. Lake GeaugaPrinting Co. (1982), 69 Ohio St.2d 41, 43; R.C. § 4141.28(J).
In the present case, the record reflects that Appellee was at fault for his termination. According to the record, Appellee held the position of section clerk, the primary duties of which entailed maintaining payroll records, answering telephones and operating a radio dispatch system. In addition, Appellee testified that his position sometimes required him to drive OTC vehicles on the turnpike in order to attend meetings at other offices and conceded that on occasion he was responsible for dispatching an emergency response vehicle known as the "water wagon."
According to Daniel Castrigano, a maintenance engineer for OTC, sometime in 1992 OTC initiated a random drug testing policy. The policy, part of a collective bargaining agreement, provided in pertinent part that:
 "* * * If there is reasonable suspicion to believe, based on specific, objective facts, that an employee is under the influence of alcohol and/or drugs or has used such substances on Commission property or is involved in a work-related accident resulting in property damage ESTIMATED in excess of $500 or personal injury, the employee may be required to undergo medical testing. Further, all employees whose job duties include activities that impact on the safety of co-workers or the public will be subject to medical testing in an effort to reduce the risk of harm to the employee, co-workers and the public. SUCH TESTING SHALL NOT OCCUR MORE THAN ONCE IN ANY CALENDAR YEAR."
(Emphasis sic.) The policy further provides that if medical testing reveals the presence of an illegal drug, the employee will be subject to disciplinary action, including termination; that if an employee is suspended without pay, he or she would be required to submit to a second test before returning to work and that a returning employee would be required to submit to periodic medical testing for up to a year following a positive test. According to Castrigano, Appellee received a copy of this policy as part of the collective bargaining agreement he was employed under. In January of 1992, Appellee was asked to sign a written consent form to be tested under the policy. Appellee signed the form under protest, noting beneath his signature that he did not believe his position as a clerk fell into the category of employees whose duties impacted the safety of co-workers or the public.
OTC's drug testing policy was revised in 1996. Under the revised policy, an employee testing positive for a controlled substance would be placed on leave without pay until a substance abuse professional (SAP) reported to OTC that the employee could return to work. For a second violation, the employee would receive a five day disciplinary suspension without pay, to commence once the SAP had again reported that the employee could return to work. Upon a third positive test, the employee would be terminated.
In 1997, the policy was again revised, providing in part:
 "Employees whose job duties include activities that impact on the safety of co-workers or the public will be subject to random, unannounced alcohol and controlled substance testing throughout each year."
Castrigano also introduced a document, signed by Appellee, indicating that Appellee had attended a review session on the drug and alcohol policy and that Appellee had received a copy of the, "Drug and Alcohol Policy for Employees with Commercial Drivers Licenses." On cross-examination, Appellee stated that no review session had been held, but conceded that he had received a copy of the policy.
Appellee's first drug test as an employee of OTC occurred on January 7, 1992, at which time Appellee tested negative. Appellee also tested negative on November 16, 1993 and May 16, 1994. According to Castrigano, the testing policy was posted at the Canfield facility where Appellee worked on April 3, 1995. Appellee tested positive for cocaine use on October 30, 1995. Appellee did not object to that test, or to the veracity of the results. After testing positive, Appellee was placed on leave without pay and referred to a SAP. Following the recommendation of the SAP, Appellee was permitted to return to work on November 24, 1995.
Appellee took a follow-up test on January 11, 1996, at which time Appellee again tested positive for cocaine use. Appellee was permitted to return to work after serving a five day disciplinary suspension and was informed that testing positive in the future would result in termination. Follow-up tests were conducted on Appellee on February 6, 1996, April 1, 1996, June 18, 1996, August 28, 1996, and October 17, 1996. On all of these dates, Appellee tested negative. However, on January 21, 1997, Appellee again tested positive for cocaine use and his employment with OTC was terminated.
Notably, during the hearing, counsel for Appellee challenged the drug tests performed on Appellee, arguing both that Appellee was not an employee whose duties impacted upon the safety of co-workers or the public and that the drug testing was unconstitutional. Counsel for Appellee also claimed that a fact-finding panel, appointed as one part of OTC's internal grievance procedure, had made a factual determination that Appellee should be reinstated to his position, but that OTC had not acted upon this recommendation.
Following the telephone hearing, the Board of Review affirmed the determination of OBES that Appellee was not entitled to unemployment compensation benefits as he had been terminated for just cause. The hearing officer stated in his "Findings of Fact" that the policy had been in writing; that Appellee had received a copy of it and was aware of it; that Appellee's duties included the relaying of emergency messages from supervisors at the scene of accidents and the dispatch of emergency vehicles; and that the decision of the OTC's fact-finding panel, appointed as part of OTC's internal grievance procedure, that Appellee be returned to work was not binding on either Appellee or OTC. The hearing officer concluded that Appellee's position impacted upon the safety of co-workers and the public and that Appellee was properly subject to testing under the OTC policy. The hearing officer also concluded that Appellee failed to file a grievance contesting that his position was not subject to testing but instead raised the issue only after his discharge. The hearing officer concluded that Appellee was discharged for just cause.
Based on the evidence adduced at the telephone hearing and contained in the record on appeal, we find that the evidence supports the decision of the Board of Review that Appellee was terminated for just cause and that unemployment compensation benefits were properly denied. The record clearly demonstrates that Appellee was aware of OTC's substance abuse policy and the ramifications of violating it. Furthermore, as the Board of Review found, the evidence supports that Appellee did not challenge his initial positive test or the first follow up test despite the many internal or contractual remedies available to him.
With respect to the argument that the initial test was invalid and that subsequent testing was "fruit of the poisonous tree," we have already noted that the Board of Review is not bound by strict rules of procedure in considering evidence in the record. However, entertaining the merits of this argument, we would not conclude that the Board of Review improperly considered the test results. The basis of Appellee's argument is that he was not employed in a safety sensitive position and that under the terms of OTC's drug testing policy, in its various incarnations, he should not have been subject to random drug testing. However, evidence from the hearing indicates that Appellee performed functions that impacted on public safety including driving an OTC vehicle and dispatching a safety vehicle. We cannot reverse the Board of Review's determination that Appellee was subject to random testing as there was some evidence that Appellee performed safety sensitive functions. Binger, supra. Furthermore, we must again note that Appellee's failure to earlier object to this testing using the contractual remedial available to him appears to be acquiescence to this testing.
We also note for the record that a telephone hearing is a proper means of conducting a just cause determination. Wright v.Unemp. Comp. Bd. of Review (1988), 51 Ohio App.3d 45, 45-46; R.C. § 4141.28(J). Furthermore, as we stated earlier, it is not the function of a reviewing court to determine the credibility of evidence presented at the hearing. Irvine, supra. So long as the hearing officer had some evidence before it on which to base its decision, that decision must be upheld. The hearing officer had evidence which was unrefuted that Appellee was discharged for testing positive numerous times for use of illegal drugs.
For the foregoing reasons, we find that Appellants' assignments of error have merit. We reverse the judgment of the trial court and reinstate the decision of the Ohio Unemployment Compensation Board of Review.
COX, P.J., dissents; see dissenting opinion.
DONOFRIO, J., concurs.
APPROVED:
 ___________________________________ CHERYL L. WAITE, JUDGE