OPINION
This is a timely appeal from a ruling by the Columbiana County Court of Common Pleas upholding a decision by the Director of Ohio Job and Family Services (formerly known as the Unemployment Compensation Review Commission) ("ODJFS") to award unemployment benefits to Dianne Orr. For the reasons that follow, this Court must affirm the judgment of the trial court.
Dianne Orr was an employee with Summitville Tiles ("Appellant") from September 25, 1978 until May 1, 2000, when Appellant terminated her for insubordination and threatening a supervisor. The incident that prompted Ms. Orr's discharge occurred on April 28, 2000. According to Judy Kessler, Orr's supervisor at the time, Orr had been working at Appellant's facility as a "floater." A floater is assigned to perform different tasks according to the company's daily needs. (Sept. 11, 2000, Hearing Tr. p. 31). Floaters are typically assigned to tasks based on seniority. On the day in question, however, Ms. Kessler had a shortage of available employees so, without regard for Orr's considerable seniority, she directed Orr to pull scrap at one of the mills.
Though openly displeased with that day's assignment, Orr headed toward the mill to begin working. Unfortunately, Orr started off towards the wrong mill. When Kessler saw Orr proceeding in the wrong direction, she mistakenly assumed that Orr was simply leaving the plant. (July 31, 2000, Hearing Tr. pp. 12, 21; Sept. 11, 2000, Hearing Tr. p. 31). Kessler stopped Orr and asked her where she thought she was going. (July 31, 2000, Hearing Tr. pp. 3-5). It was at that point Orr discovered she was headed to the wrong mill.
At the hearing on this matter, Orr characterized Kessler's decision to assign her to the menial and unpleasant task of pulling scrap as yet another instance in a pattern of perceived mistreatment she had experienced under Kessler's supervision. (Sept. 11, 2000, Hearing Tr. p. 31). Thus, when Kessler demanded to know where she was going, Orr lashed out angrily, and snapped, "where do you think I'm going?" According to Orr, she told Kessler that if Kessler was going to "take her down," Orr would take Kessler down with her. (Sept. 11, 2000, Hearing Tr. p. 33). Orr explained at the hearing that by these remarks, she meant that if Kessler was going to get her fired, Orr would make sure that Kessler would get fired as well. (Sept. 11, 2000, Hearing Tr. p. 36).
Ms. Kessler had a different recollection of the incident. According to Kessler, when she asked Orr to tell her where she was going, Orr turned, pointed a finger at her and twice said that she was going to "take her down." (July 31, 2000, Hearing Tr. pp. 14-15). Although Kessler did not ask Orr what she meant by the comment, when Kessler reported the incident to another supervisor she initiated the report by saying: "If I go out and start my car tonight and it blows up, Dee Orr did it." (July 31, 2000 Hearing, Tr. p. 16).
Ms. Orr was allowed to finish out her shift pulling scrap. She returned to work on the following Monday. At the end of Monday's shift, Appellant fired her. (Sept. 11, 2000, Hearing Tr. p. 38).
Orr's subsequent application for unemployment benefits was denied. A request for redetermination was also denied. Orr then appealed the redetermination to ODJFS under R.C. § 4141.28(G). After a hearing, ODJFS modified the redetermination, concluding that Orr had not been discharged for just cause under the statute. (Decision, Sept. 21, 2000). Appellant's request for review of the hearing officer's decision was denied on November 7, 2000.
Appellant then appealed the administrative decision to the Columbiana County Court of Common Pleas. In an order entered May 1, 2001, the court upheld ODJFS's decision. Specifically, the court resolved that:
 "The threat here was not taken as a threat of bodily harm by anyone. The threat was obviously a hotheaded remark made between two employees who did not like each other and in the heat of the moment. It is understandable for an employer to discharge an employee who makes such comments and acts in such a manner when required to do an assigned job. However, under the unemployment compensation cases this does not amount to just cause to deny benefits." (Judgement Entry, May 1, 2001, p. 2).
On May 11, 2001, Appellant filed a Notice of Appeal from that decision to this Court.
Appellant alleges the following assignments of error:
 "THE TRIAL COURT'S DECISION WHICH FOUND THAT APPELLEE DIANA G. ORR WAS DISCHARGED WITHOUT JUST CAUSE IS UNREASONABLE AND UNLAWFUL.
 "THE TRIAL COURT'S DECISION WHICH FOUND THAT APPELLEE DIANA G. ORR WAS DISCHARGED WITHOUT JUST CAUSE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
These claims attack the determination that Ms. Orr was not discharged for just cause and argue that such a decision was unreasonable, unlawful and contrary to the weight of the evidence. Because they essentially argue the same thing, they will be addressed together.
In challenging the weight of the evidence below, Appellant faces an onerous standard of review. Reviewing courts will not reverse a just cause determination made by ODJFS unless it is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, Plakas Mannos v.Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, 696-97.
This Court's review of a common pleas court's decision upholding the determination by ODJFS requires us to apply the same rigorous standard.Laukert v. Ohio Valley Hosp. Assn. (1996), 115 Ohio App.3d 168, 171-172. In addition, ODJFS's final decision may not be reversed under a manifest weight of the evidence analysis if it is supported by some evidence in the record. Binger v. Whirlpool Corp. (1996), 110 Ohio App.3d 583, 589. Where ODJFS might reasonably have decided a case either way, a court of review has no authority to upset the decision. Irvine v. UnemploymentComp. Bd. of Review (1985), 19 Ohio St.3d 15, 18.
What constitutes just cause is a question of fact, and purely factual questions are the exclusive province of ODJFS. Id. at 17. In undertaking a review of their decision, this Court must ascertain only whether it is supported by the record. Id.
According to R.C. § 4141.29(D)(2)(a), an individual is not eligible for unemployment benefits if he was discharged for just cause. "Traditionally, just cause, in a statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Tzangas, supra, 697; citing Irvine, supra, 17.
A just cause determination must be consistent with the purpose of the Unemployment Compensation Act ("Act"). In Tzangas, that purpose was articulated as follows:
 "`The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.' * * *
 "When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination.
 "* * * the question of fault cannot be rigidly defined, but, rather, can only be evaluated upon consideration of the particular facts of each case. If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination." Tzangas, 697-698 (citations omitted).
 Accordingly, the Act contemplates that the focus of the just cause determination is employee fault.
According to Appellant, Orr's discharge was entirely Orr's fault. She was unhappy with the task to which her supervisor assigned her, and she responded by behaving in an insubordinate and threatening manner. Appellant maintains that such conduct gave the company just cause to fire Orr. ODJFS and the common pleas court, however, disagree with Appellant.
ODJFS concluded that, while Orr's comments to her supervisor were inappropriate and may have justified her dismissal, her supervisor, "exaggerated and embellished the threat made against her." Accordingly, ODJFS resolved that, "it could only be speculated what disciplinary action, if any, would have been taken against [Orr] if Judy Kessler had not embellished and exaggerated [Orr's] threat. (Decision of Sept. 21, 2000, p. 3).
Appellant contests these findings. The finding that Judy Kessler embellished and exaggerated the threatening nature of Orr's remarks, however, is a factual conclusion as well as a credibility determination that this Court cannot disturb. Moreover, the record lends support to such a finding. Appellant now freely acknowledges that the threat was not violent in nature. Certainly, if Orr's remarks were truly as threatening as Kessler ultimately claimed, Appellant would not have waited through the weekend and until the end of the next work day to fire Orr.
Instead, Appellant argues that even if we accept Orr's account of the incident, Orr sufficiently violated Appellant's code of employee conduct to give the company just cause for discharge. Appellant's argument, however, misses the point. This Court recognizes that Appellant is in the best position to establish and enforce limitations on the behaviors it will tolerate from its employees in the workplace. Nevertheless, Appellant overlooks the fact that whether an employer has reason to fire an employee is an entirely different question than whether the employee's conduct constitutes just cause to deny unemployment benefits under the Act. Adams v. Harding Machine Co., Inc. (1989), 56 Ohio App.3d 150, 155.
An employer may justifiably discharge an employee without incurring liability for wrongful discharge, but that same employee may be entitled to unemployment compensation benefits notwithstanding the employer's motives. Durgan v. Ohio Bureau of Employment Services (1996),110 Ohio App.3d 545, 549. This is true because, as noted above, "just cause" under the Act is predicated upon employee fault. Consequently, the "just cause" sufficient to justify an employee's termination need not be as grave as the "just cause" required to disqualify a discharged employee from receiving unemployment compensation under R.C. § 4141.29. Wilsonv. Matlack, Inc., et al. (2000), 141 Ohio App.3d 95, 101; citing Dean v.Miami Valley Hospital, Inc. (Feb. 22, 1988), 2nd Dist. No. 10391.
In Wilson, supra, the reviewing court concluded that it was not unreasonable or unlawful for the administrative agency to deny unemployment benefits to an employee discharged after he failed a random drug test. In so resolving, however, the reviewing court acknowledged that under certain circumstances an employee terminated for just cause according to a labor contract could still theoretically secure unemployment benefits under the Act. Id. at 101.
Although the outcome of the instant case is different from that reached in Wilson, the principle at work in Wilson is applicable here. In upholding the decision of ODJFS to allow Orr's request for unemployment benefits, the trial court remarked, "[i]t is understandable for an employer to discharge an employee who makes [the comments that Orr made] and acts in such a manner when required to do an assigned job. However, under the unemployment compensation cases this does not amount to just cause to deny benefits." (Judgment Entry, May 1, 2000, p. 2).
Thus, the trial court's decision to uphold the ODJFS's determination that Orr was entitled to unemployment benefits is supported by some competent, credible evidence, is reasonable and consistent with the law.
Having found both of Appellant's assignments of error to be without merit, this Court hereby affirms the judgment entered by the Columbiana County Court of Common Pleas.
Donofrio, J., and Vukovich, P.J., concur.