1ST STEP DRIVING SCHOOL et al., Appellant,

v.

OHIO DEPARTMENT OF PUBLIC SAFETY, DIVISION OF ADMINISTRATION,
GOVERNOR'S HIGHWAY SAFETY OFFICE, Appellee.

2007-Ohio-3989.]

Court of Common Pleas of Ohio,
Shelby County, Civil Division.

No. 07CV000038.

Decided May 31, 2007.

E.J. Wesp Co., L.L.C., and E. Joel Wesp, for appellant.

Marc Dann, Attorney General, and Walter J. McNamara, Assistant Attorney General, for appellee.

—————

JAMES F. STEVENSON, Judge.

{¶ 1} This case comes on before the court on an appeal pursuant to R.C. Chapter 119 of a decision of the Ohio Department of Public Safety, Governor's

Highway Safety Office ("department") to revoke the driver's school license of 1st Step Driving School and the driver-training-manager and instructor license of Todd Snyder.

{¶ 2} 1st Step is a driving school licensed by the state of Ohio. Snyder is the president and only driving instructor of 1st Step. The department received complaints alleging that Snyder engaged in inappropriate conversations of a sexual nature with students, touched students during driving and made them uncomfortable, and in other ways conducted himself in a questionable manner. Upon investigating, the department found merit to the complaints and determined that Snyder had violated the "good character and reputation" clause of Ohio Adm.Code 4501–7–03.

{¶ 3} The department issued a notice of intent to revoke, 1st Step and Snyder requested a hearing, a hearing was held, the hearing officer issued a report and recommendation that the department revoke the license, and the department adopted the recommendation and issued a final order revoking 1st Step's and Snyder's licenses. From those proceedings 1st Step and Snyder appeal.

{¶ 4} On February 27, 2007, this court issued its scheduling order providing for the filing of appellant's brief, appellee's answer, and appellant's reply brief. The scheduling order provided that the matter would be submitted on briefs without oral hearing. The court has before it and has considered the record of proceedings and the briefs of the parties.

Standard of Review

{¶ 5} R.C. 119.12 provides that upon appeal to the common pleas court, "[t]he court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence, and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

{¶ 6} In connection with the standard of review, the agency's findings of fact are presumed to be correct and must be deferred to by the reviewing court unless that court determines that the agency's findings are internally inconsistent, or impeached by evidence of prior inconsistent statement, or rest on improper inferences or are otherwise unsupportable.[1] The common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court must appraise all the evidence as to the credibility of the witnesses, the probative character of the

---

1. *VFW Post 8586 v. Ohio Liquor Control Comm.* (1998), 83 Ohio St.3d 79, 697 N.E.2d 655.

evidence, and the weight thereof in order to determine whether the agency order is supported by the requisite evidence.[2] In doing so, the common pleas court must give due deference to the determination of the administrative body when the evidence before the court consists of conflicting testimony. Weight to be given evidence and the credibility of witnesses are issues for the administrative body as the trier of fact.[3] The role of the common pleas court in an administrative appeal is limited to determining whether the judgment of administrative agency is supported by reliable, probative, and substantial evidence and is in accordance with the law.[4] The common pleas court may not try the case de novo nor substitute its judgment for that of the administrative agency.[5]

Ohio Administrative Code 4501-7-03 Character and Fitness

{¶ 7} The department revoked 1st Step's and Snyder's licenses for violations of Ohio Adm.Code 4501-7-03(A), which requires a person connected with a driver-training enterprise to be of "good character and reputation." The hearing officer found, based upon evidence presented, that 1st Step and Snyder had violated that standard.

{¶ 8} 1st Step and Snyder contend that "good character and reputation" is not defined; therefore, paragraph (A) must be read in conjunction with paragraphs (B) through (E) of Ohio Adm.Code 4501-7-03. In effect, 1st Step and Snyder claim that since paragraph (A) is not defined, it is limited to those circumstances outlined in paragraphs (B) through (E).

■ {¶ 9} This court does not find 1st Step's and Snyder's argument persuasive. To so interpret Ohio Adm.Code 4501-7-03 would result in paragraph (A) being meaningless surplusage. Rather, this court interprets (A) as a catchall provision to cover categories of character and conduct that may be so broad as to defy itemization.

■ {¶ 10} This court has been unable to find a statutory or administrative code definition of the phrase "good character and reputation." Neither party has provided to this court a definition. There is a paucity of case law defining the phrase.

---

2. *Nye v. Ohio Bd. of Examiners of Architects,* 165 Ohio App.3d 502, 2006-Ohio-948, 847 N.E.2d 46.

3. *Gaydeski v. Ohio Liquor Control Comm.,* 155 Ohio App.3d 349, 2003-Ohio-6190, 801 N.E.2d 487.

4. *Baughman v. Dept. of Public Safety Motor Vehicle Salvage* (1997), 118 Ohio App.3d 564, 693 N.E.2d 851; *Gen. Motors Corp. v. Joe O'Brien Chevrolet, Inc.* (1997), 118 Ohio App.3d 470, 693 N.E.2d 317.

5. *Baughman,* 118 Ohio App.3d at 571, 693 N.E.2d 851.

{¶ 11} Nevertheless, the Ohio Administrative Code, state statutes, the Evidence Rules, and professional codes all refer to "good character" or "good character and reputation." [6] It may very well be that good character and reputation are so innately understood that, although difficult to define, as Justice Potter Stewart said, you "know it when [you] see it." [7]

{¶ 12} In the case of *Emery v. New Orleans*, [8] the Court of Appeals of Louisiana, 4th Circuit, addressed a complaint that a liquor owner's due process rights were violated when the city failed to renew its liquor license, finding a failure of "good character and reputation." The court found, even though not defined, that the city had a legitimate interest in providing liquor licenses to only persons whose character and reputation were unquestioned. The court commented that the phrase seems to be self-defining and that any attempt to define would result in "cumbersome, wordy enactment[s] which could have added nothing to the inherent meaning of the words themselves and might well have detracted from their efficient and effective application." [9] The court further noted, "[T]he term is widely accepted and understood as a concise and meaningful description of an attribute of a desirable citizen." [10] The United States Supreme Court has approved licensing requirements of "good character and reputation." [11]

{¶ 13} Accordingly, this court finds that Ohio Adm.Code 4501–7–03(A) is a separate, distinct condition for the obtaining or the maintaining of a driver's school license. The fact that it is not statutorily defined does not make it any less of a standard that is reasonably understandable and ascertainable. Further, the court finds that the state has a vested interest in assuring that individuals who are placed in close contact with students in relatively isolated situations are of good character and beyond reproach.

Evidentiary Issues

{¶ 14} 1st Step and Snyder also object to the admission of certain written statements of witnesses not called by the state, as hearsay. During the hearing,

---

6. See, for example, Ohio Adm.Code 3301–37–04, 3901–5–07, 4501–21–04, 4501–47–09, and 4751–1–09, and R.C. 4733.11.

7. *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (Stewart, J., concurring), commenting on the definition of hard-core pornography.

8. (1985), 473 So.2d 877.

9. *Emery*, 473 So.2d at 880.

10. Id.

11. *Gundling v. Chicago* (1900), 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725; *New York v. Van De Carr* (1905), 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305

the department presented two former students, who testified live. Additionally, the department's investigator identified written statements obtained during the investigation from other former students of 1st Step. These written statements were subsequently admitted as additional evidence over the objections of 1st Step and Snyder.

{¶ 15} When 1st Step and Snyder's counsel at the administrative hearing objected to the admission of one of the statements, the response from the hearing officer was that 1st Step and Snyder could have called the witness themselves. The hearing officer failed to appreciate or seemingly understand that 1st Step and Snyder had no obligation to try to make the department's case for them. 1st Step and Snyder's attorney had no obligation to call witnesses who he knew in advance would have been of more help to the department than to his client. It would be tantamount to malpractice for him to have done so; yet the hearing officer rebuked counsel for objecting to the introduction of the hearsay statement by the department.

{¶ 16} The hearing officer seemed to think that since 1st Step and Snyder could have subpoenaed the witnesses, the department's failure to call them was excused and the admission of the witnesses' statement was justified. This conclusion is certainly not warranted. The statements were clearly hearsay, and the department demonstrated no exception to the hearsay rule during the administrative proceeding.

{¶ 17} It is true that the strict rules of evidence do not apply in administrative proceedings.[12] However, the agency should not act upon evidence that is not admissible, competent, or probative of facts to be determined.[13] Nevertheless, because the Rules of Evidence are not required to be strictly followed, a hearing officer's decision should not be overturned for the admission of hearsay as long as such evidence is given proper weight.[14]

{¶ 18} In reviewing the decision of the hearing officer, this court notes that the hearing officer commented that he gave hearsay statements slight weight and said that those statements were not sufficient to sustain the department's burden. The court finds that the hearing officer gave the hearsay statements little, if any, weight and based his decision on the testimony of witnesses at trial and the evidence admitted at the hearing without objection.

12. *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 7 OBR 1, 453 N.E.2d 1262.

13. *Haley,* 7 Ohio App.3d at 6, 7 OBR 1, 453 N.E.2d 1262.

14. *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583, 589, 674 N.E.2d 1232.

Conclusion

■ {¶ 19} A review of the hearing transcript shows that Snyder admitted buying meals and ice cream for students without parents' knowledge or consent. Michelle Bruns testified that sexual remarks were made, and Snyder asked her whether she was sexually active. She was so uncomfortable, she told her mother about his remarks. She further testified that she believed Snyder's character to be "unprofessional" and "bad." Sierra Wagner testified that although the instruction was good, the behind-the-wheel training made her uncomfortable because Snyder would talk about sex. Wagner further reported that Snyder made comments about her breasts, invited her into his home, took her to Lake St. Marys, and walked with her by the lake talking about boyfriends. Wagner also said that Snyder would touch her leg, her arm, and her hair.

{¶ 20} 1st Step and Snyder attack the credibility of those witnesses who testified live at the hearing. They point to claimed inconsistencies between the hearing testimonies of Bruns and Wagner and previous written statements given by those witnesses. The statements were admitted into evidence and available to the hearing officer for consideration. The hearing officer is in the best position to observe the witnesses and their demeanor and compare their testimony to previous written statements. The hearing officer best judges credibility of a witness.[15] This court finds nothing so inconsistent between the written statements and the testimony of the witnesses to disturb the findings of the hearing officer.

{¶ 21} The hearing officer found that the conduct of Todd Snyder clearly and negatively affected his character and reputation. The testimony at the trial demonstrated that he discussed with the students sex and the students' sexuality. The hearing officer found that the sworn testimony of the two witnesses was relevant and credible and that the denials of Todd Snyder were unconvincing. This court finds persuasive the uncontradicted testimony of Michelle Bruns that she reported the conduct of Todd Snyder to her mother, and her mother was so concerned that from that time forward, her mother rode with her in the car. Certainly, if the conduct of an instructor causes a parent sufficient concern that a parent decides to accompany the child on training drives, concern is raised about the fitness of that instructor to be in the presence of student drivers. This court's review of the transcript of these proceedings reveals that the decision of the hearing officer is supported by credible, reliable, probative, and substantial evidence.

---

15. *Goodrich v. Larrick,* 5th Dist. No. 2004 CA 0032, 2005-Ohio-250, 2005 WL 136319; *Kovacic v. Higbee Dept. Stores,* 11th Dist. No. 2004–L–150, 2005-Ohio-5872, 2005 WL 2933379; *Loggins v. Ohio Bur. of Emp. Servs.* (Mar. 15, 2001), 4th Dist. No. 00CA2716, 2001 WL 285251.

{¶ 22} Accordingly, the court holds upon review of the record and the briefs of the parties that the administrative order is supported by reliable, probative, and substantial evidence. It is hereby the judgment of this court that the decision of the hearing officer and the order of the department are affirmed.

{¶ 23} The clerk of this court is directed to deliver copies of this order to the attorneys of record.

So ordered.