### Campion v. OBES
*[Cite as 6 AOA 224]*

*Case No. 57299*
*Cuyahoga County, (8th)*
*Decided August 16, 1990*

John A. Rego, Squire, Sanders & Dempsey, 1800 Huntington Bldg., Cleveland, Ohio 44115, for Plaintiff-Appellant.

R. Elise Farrell, The Legal Aid Society of Cleveland, 3408 Lorain Avenue, Cleveland, Ohio 44113, for Plaintiff-Appellant.

Anita Myerson, The Legal Aid Society of Cleveland, 1223 West Sixth Street, Cleveland, Ohio 44113, for Plaintiff-Appellant.

Anthony J. Celebrezze, Jr., Attorney General, Jerome C. Webbs, Assistant Attorney General, State Office Bldg., 12th Fl., 615 West Superior Avenue, Cleveland Ohio 44113-1899, for Defendant-Appellee.

STILLMAN, J.

Appellant, Donita Campion, was denied unemployment benefits after a hearing before the Board of Review. The referee concluded that appellant was discharged for just cause in connection with work. An application to institute a further appeal was denied.

A.
**THE DECISION OF THE BOARD OF REVIEW IS ERRONEOUS BECAUSE THE REFEREE'S FINDINGS ARE UNLAWFUL, UNREASONABLE, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

(1) THE REFEREE UNLAWFULLY CREDITED THE EMPLOYER'S UNSWORN HEARSAY ALLEGATIONS--WHICH APPELLANT HAD NO OPPORTUNITY TO CROSS-EXAMINE -- OVER APPELLANT'S SWORN TESTIMONY.

Appellant contended that the Board relied on the hearsay statements of the appellant's employer despite the uncontroverted testimony of appellant to the contrary.

Appellant had been employed by the Veterans Administration. Her employer did not appear at the hearing. Appellant was the only witness. On her application appellant stated that she had been discharged. The record contains a letter from appellant to her employer in which she stated that she resigned "due to the uncertainty of the Vet Center Program." In statements to the Bureau she further explained that she "resigned after being informed of intent to terminate during trial period," "resigned option would have been discharged," and that her "contract not renewed. My resigning not voluntarily [sic]. I was told I had to do this. I was actually separated when my contract was not renewed. I performed the job to the best of my ability. I was not guilty of any misconduct."

The parties agree that appellant is entitled to benefits despite the "resignation" if the discharge was not for just cause. Just cause is "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." *Irvine v. Unemployment Compensation Board* (1985), 19 Ohio St. 3d 15.

In order to show that her resignation was not voluntary (and thus that she was still entitled to benefits if the resignation was forced), appellant submitted the discharge letter sent by her employer to her. That letter states, in pertinent part, as follows:

"1. This is to inform you that you will be discharged during your trial period from the position of Readjustment Counseling Specialist, GS-102-9, effective close of business January 2, 1988.

"* * *

"3. The following reasons have been taken into consideration in making the decision to discharge you from employment at this Medical Center:

"a. On October 28, 1987, you refused to see a client stating you didn't want to take on a new client and that you had already seen your required number of new clients for the month. You had been counseled on August 24, 1987 regarding a similar refusal to see a new client.

"b. Excessive tardiness. As of December 17, 1987, you had been tardy on sixteen separate occasions. Although formally counseled on April 20, 1987, July 27, 1987, October 7, 1987 and again on December 1, 1987, you continued to arrive late for work."

At the hearing the referee asked appellant about the employer's allegations in the discharge letter that she had been tardy sixteen times and continued to arrive late after having been counselled four times' regarding tardiness, and that she had refused to see a client after having been counseled regarding a similar refusal. In the referee's findings of fact he concluded as follows:

appellant was late sixteen times up to December 17, 1987 and had continued to be late despite counseling on that subject on three occasions. Friction developed between appellant and her supervisor regarding her work performance. In early December appellant was threatened with discharge if her work performance did not improve. Appellant was discharged by means of forced resignation because of tardiness and being counseled on unsatisfactory work. The referee concluded that "[i]n view [sic] of the foregoing ... claimant was discharged for just cause in connection with work."

Appellant testified as follows:

"She never refused to see a client that she had been told to see (R. 5). She may have said at a staff meeting that she didn't want to see any more but she never refused to see a client that had walked in (R. 5-6) and she saw all clients sent to her (R. 7). She once jokingly hid under a table and said to another counselor that she didn't want to see a client (R. 7). The other counselor said nicely that she would see the client (R. 7). That counselor did not report her (R. 7). She knew nothing about an incident on October 28th (R. 7)."

When asked whether the employer's allegation that she was late sixteen times as of December 17, 1987 was correct she said she didn't know (R. 8) and testified concerning her tardiness as follows (paraphrased):

"She was not always actually late (R. 9). She received a memo that said that employees could be up to seven minutes late (R. 9). Her boss told her that she could still be up to seven minutes late (R. 9). If an employee was late he or she had to sign a card and she did not sign a card when she was less than eight minutes late. She did not know how the employer arrived at a total of sixteen occasions of tardiness.

"On August 29, 1987 she lost her license for ninety days because of a failure to have insurance (R. 10). During that period she was late quite often (R. 10). It was "hard to say" how many times she was late during that period (R. 10). She used 'comp. time' when she was late during the weeks ending October 10 through November 17 (R. 10). If an employee were ten minutes late fifteen minutes of 'comp. time' would be docked (R. 10). If the tardiness were sixteen minutes a half hour would be docked (R. 10). She used an hour, an hour and three quarters of an hour in a three week period. When she asked to use 'comp. time' her boss made a new rule that it must be used in eight-hour 'chunks' (R. 10). This new rule was made to harass her; she had used two hours to go to court (R. 10). She was not allowed to use 'comp. time' for fifteen minute segments (R. 12).

"Her employer did talk to her or complain about her tardiness but did not threaten her with discharge for that (R. 12). In April she was under seven minutes late and the memo said that was allowed (R. 13). She overslept twice and was under an hour late (R. 13). One of those occasions was after she was told to come to a conference regarding her job (R. 13). She was told she had two weeks to shape up and not be negative or she was going to lose her job (R. 13). She was not late in those two weeks (R. 13). That conference might have been on December 1st but probably was not (R. 13). It was in the beginning of December (R. 15)."

Appellee emphasized the fact that appellant made certain admissions. An examination fails to reveal any admission to the specific charges:

(1) sixteen occasions of tardiness as of December 17, 1987 after counseling on April 20, July 27, October 7 and December 1 of 1987; and

(2) a refusal on October 28, 1987 to see a new client (because she had fulfilled her quota) and also a previous refusal.

Appellant did admit to jokingly saying that she did not want to see a client. She never refused to do so. The other counselor offered to take the client. No one disputed appellant's version and the employer's hearsay cannot be accepted over her testimony. *Isaac v. Admin.* (Mar. 21, 1985), Cuyahoga App. No. 48850, unreported.

The employer merely stated the refusal as a fact but offered no details or substantiation. Appellant's version must prevail. There was no evidence of a refusal to see a client.

Appellee points out that when appellant was asked whether the allegation that she was late sixteen times as of December 17, 1987 was correct, she replied that she didn't know. However, she explained that she could be "late," i.e., arrive up to seven minutes late, and still not be late, i.e., tardy. She specifically stated that she did not know how the employer arrived at a total of sixteen occasions. Although she admitted to being late quite often, she did not admit to sixteen instances. She was not discharged for less than sixteen occasions. The letter claimed that she had been counseled four times but she never conceded that there had been four occasions. She specifically denied being late after she was counseled in December.

The referee concluded that appellant was late sixteen times and continued to be late despite counseling on three occasions. There was no evidence to support those conclusions and appellant denied them.

The decision of the trial court is not supported by the evidence and is reversed. *See Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41.

Assignment of Error No. A(1) is sustained.

B.

(2) THE REFEREE UNLAWFULLY MADE A FINDING OF "JUST CAUSE" FOR DISCHARGE BASED ON GROUNDS NOT ALLEGED OR RELIED UPON BY THE EMPLOYER.

The findings of fact of the referee stated, in pertinent part, as follows:

"Claimant was late to work on 16 occasions up to December 17, 1987. She was counselled regarding tardiness to work on April 20, 1987, again on July 27, 1987, and on October 7, 1987 but it continued. *Friction developed* between the claimant and her supervisor regarding the matter in which the claimant performed her assigned work.

"In early December, 1987, claimant was threatened with discharge from employment if her work performance did not improve. On January 2, 1988, the claimant was discharged by Veterans Administration Medical Center by means of forced resignation because of tardiness to work and being counselled on unsatisfactory work during her probationary period of employment.

"***

"Reason:
"***

"Claimant was discharged because of continuing tardiness to work after being counselled and because of unsatisfactory work performance during her probationary period of employment. Even though the claimant had been counselled on several occasions regarding tardiness, it continued.

*"In addition,* friction developed between the claimant and her supervisor regarding the manner in which the claimant performed her assigned work. *All of this* was detrimental to her employer's best interest.

*"In veiw [sic] of the foregoing,* the Referee must conclude that the claimant was discharged for just cause in connection with work." (Emphasis added.)

Even though the referee stated the reasons as being tardiness and unsatisfactory work performance (actually, an alleged refusal to perform work, i.e., insubordination), it is apparent that the referee found a discharge because of the alleged tardiness and refusal *and* the alleged "friction." He stated that "all of this was detrimental" and that "[i]n view of the foregoing" he concluded appellant was discharged for just cause. This cannot be read to mean that any of the three factors was sufficient. In any event, appellant's employer stated that she was fired for both, not for either.

The referee relied on a ground for discharge never asserted by the employer. This was clearly unreasonable. Assignment of Error No. A(2) is sustained.

B. THE DECISION OF THE BOARD OF REVIEW IS ERRONEOUS BECAUSE THE

### REFEREE DENIED APPELLANT, WHO WAS UNREPRESENTED, A FAIR HEARING.

#### (1) THE REFEREE DEMONSTRATED A PREDISPOSITION IN FAVOR OF THE EMPLOYER.

Appellant cites several instances during the referee's examination of appellant in which he allegedly demonstrated this predisposition in favor of the employer.

The referee asked appellant how her employer came up with a total of sixteen (R. 9). She argues that this made appellant prove the employer's case. However, appellant had just explained that when she was up to seven minutes late it was not considered tardiness. In seeking the facts the referee properly inquired whether the employer could have counted those and, if not those, some other special circumstance, like the under eight-minute rule, that appellant had not yet revealed.

The referee should not have asked "Did you refuse to see this client because you had other clients to see at that time?" (R. 5) since the question did presume a refusal. He later improperly asked her why someone reported her *refusal* (R. 7) when she had denied any refusal. The referee also improperly extracted testimony about friction and asked leading questions in an effort to suggest that she was properly fired for that new reason (R. 13-19). However, appellant was not mislead or shaken into an admission and so was not prejudiced. Assignment of Error No. B(1) is overruled.

#### (2) THE REFEREE FAILED TO ASSIST APPELLANT IN ASCERTAINING FACTS WHICH WOULD ESTABLISH HER RIGHT TO BENEFITS.

Appellant argued that appellant presented facts concerning four grounds upon which the discharge could be attacked:

the employer's policy regarding discharge for tardiness was inequitably applied; a rule concerning the use of "comp. time" was changed to harass here; the employer's progressive discipline policy was not followed; and the stated grounds for the discharge were a pretext to avoid the necessity of having a substantial reason after her probationary period was over.

"Where a claimant ... Is not represented by counsel, the ... referee ... shall ... give him every assistance compatible with the discharge of the official duties of the ... referee." Ohio Administrative Code Section 4146-7-02. See *Barnett v. Admin.* (June 12, 1986), Cuyahoga App. No. 50751, unreported (duty to assist development of facts).

Concerning the discharge for tardiness policy, appellant testified as follows (paraphrased):

"When her supervisor told her that she could still be up to seven minutes late he also said that another employee was a lot more than one to three minutes late (R. 8-9) and it wasn't fair because he'd have to say something to him (R. 9). She was sure that the other employee was late more than sixteen times (R. 9). Other people were late (R. 13)."

"[A] lot more than one to three minutes late" could still be less than eight minutes late. In any event, it was not clear how often the other employee was late or what the circumstances were. The referee should have inquired.

Concerning the use of "comp. time," appellant testified that when she asked to use "comp. time" to cover tardiness she was told that it had to be used in eight-hour "chunks" even though she had used a two-hour chunk to go to court. The referee failed to follow up on this allegation of harassment.

Appellant also testified that she was told that she would be fired if she did not "shape up" in the next two weeks and yet was fired even though she was not late. Appellant argued that this constituted a self-imposed progressive discipline policy and that appellant alleged that appellant's employer violated it. The referee failed to question her about that.

Last, appellant claimed that she was fired to avoid having to have a substantial reason after her probationary period. She testified as follows (paraphrased):

"Her supervisor told her that she didn't fit in or work out (R. 4). He said he didn't have to have any reason but after her probationary period he'd have to have a good reason (R. 13). She didn't think that there was a conflict of personalities but her supervisor said she had a problem (R. 15). There was friction between them (R. 19). The stated reasons for the discharge were a pretext to avoid having to have a real reason after the probationary period ended (R. 23)."

The referee failed to make any inquiry. The appellant was denied a fair hearing. Assignment of Error B(2) is sustained.

The judgment is reversed and vacated. Judgment entered for appellant.

This cause is reversed for further proceedings consistent with this opinion.

SWEENEY, P.J., VICTOR, J., concur.

Sitting by Assignment of the Supreme Court of Ohio:
SAUL G. STILLMAN, Retired, Eighth District Court of Appeals.
WILLIAM H. VICTOR, Retired, Ninth District Court of Appeals.