LaCHAPELLE, Appellant,

v.

Director of JOB AND FAMILY SERVICES, Appellee, et al.

[Cite as *LaChapelle v. Ohio Dept. of Job & Family Servs.*, 184 Ohio App.3d 166, 2009-Ohio-3399.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–08–1446.

Decided July 10, 2009.

R. Kevin Greenfield, John D. Franklin, and Faten A. Eidi, for appellant.

Richard Cordray, Attorney General, and Eric A. Baum, Managing Attorney, for appellee.

WILLAMOWSKI, Judge.

{¶ 1} This case comes to us on appeal from a decision denying the eligibility of appellant, Colleen LaChapelle, for unemployment compensation. Because we find the decision of the Unemployment Compensation Review Commission to be against the manifest weight of the evidence, we reverse.

{¶ 2} LaChapelle was hired by the Lucas County Community Prevention Partnership ("Partnership") as a staff accountant in May 2005. In December 2005, she completed an employee evaluation with her superior, Heather Webb. This was standard protocol for employees at the Partnership after six months of employment there. In the evaluation, LaChapelle had to evaluate both her performance and the performance of her supervisor, Webb. When asked to rate her own effectiveness and performance on a scale of one to ten, she gave herself a ten. When asked to rate Webb's performance, she gave her a five. The reason she gave for her average rating of Webb was that Webb did not give her access to all the accounting information that she felt she needed in order to best do her job. She went on to say, with regard to Webb, "My supervisor seems to be burnt out in her job and she needs to redevelop her focus. I would recommend taking some management classes."

{¶ 3} Through the course of her employment, LaChapelle noticed irregularities in the company's finances. For instance, she suspected that the company's chief executive officer, Deacon Dzierzawski, tried to have the Partnership buy back his vacation time after actually taking vacation, thereby double-dipping on the payroll. She also suspected that Dzierzawski's wife had been using a company credit card for personal use and that the company's expense-reimbursement policy was being violated, since receipts were not being turned in.

{¶ 4} In addition to the irregularities, LaChapelle developed the opinion that the company's money was being poorly managed. She obtained salary information of other employees to provide support for her position that Dzierzawski was receiving disproportionately high raises. Included in the record is a memorandum written by Dzierzawski informing all employees of the Partnership that

"certain items" are confidential. He testified at the hearing that this included the salary information that LaChapelle had accessed.

{¶ 5} LaChapelle first took her concerns to Webb, her immediate superior. When Webb offered no help, she went to Webb's supervisor, Dzierzawski himself. Unsatisfied with Dzierzawski's response, LaChapelle brought her concerns to the attention of Carol Haddix, the vice president of the Partnership's board of trustees. The company has a complaint procedure that required LaChapelle to contact the president of the board instead of the vice president. LaChapelle had signed this policy as having read and understood it when she was first hired.

{¶ 6} After warning LaChapelle that she might face some sort of retaliation for making her accusations, Haddix discussed these concerns with the president of the board. An executive session was then scheduled so that the entire board could review the allegations. Ultimately, Dzierzawski was forced to defend himself against LaChapelle's accusations at a board meeting on February 2, 2006.

{¶ 7} Contemporaneously, in late January 2006, LaChapelle had brought into her office an elliptical exercise machine, which she planned to use during her lunch breaks. After conferring with the company's insurer, however, Webb informed LaChapelle on January 31—five days after LaChapelle had reported questionable financial disparities to Haddix—that the machine's presence in the office was a liability and that it had to be removed immediately. Though LaChapelle disagreed that it was a liability and wrote an e-mail to Webb telling her, "You're wrong" and "[S]peak to me face to face," she removed it a day after being told to do so. On February 2, she was given two written warnings for insubordination resulting from her e-mail response to Webb and her one-day delay in removing the machine. LaChapelle attributed the short delay to a lack of sufficient notice and available transportation. Because the machine had been in the office for approximately ten days before she was told to remove it, LaChapelle inferred that she was being harassed and retaliated against for her report to Haddix.

{¶ 8} LaChapelle e-mailed Haddix again to register these harassment claims on the same day, February 2. Included in these claims was an allegation that LaChapelle had been locked out of filing cabinets that she needed to access in order to do her job. The record includes an e-mail from Heather Webb, dated January 31, explaining that she had locked the cabinet after being forced to put the company's checkbook in it because the lock on her desk had broken. She offered LaChapelle and Dzierzawski access to the cabinet in her e-mail.

{¶ 9} At its meeting on February 2, the board ultimately concluded that Dzierzawski had done nothing improper and that LaChapelle's accusations were without merit. Despite this, the president of the board urged that the Partner-

ship's "internal controls need to be reviewed and adjusted" so as to prevent future unfounded allegations from arising.

{¶ 10} Haddix testified that she believed that LaChapelle had made her accusations in good faith. However, she also testified that after the board questioned Dzierzawski at its meeting on February 2, they came to a consensus that LaChapelle should be fired for violating the company's complaint procedure and for being insubordinate and disrespectful. According to her testimony, Haddix herself voted to terminate LaChapelle's employment, even though she thought LaChapelle was only doing her job, because of the December 2005 evaluation. Haddix believed this showed "a lack of respect for her superior."

{¶ 11} The next day, on February 3, 2006, Dzierzawski informed LaChapelle that her employment was being terminated for a failure to follow the company's rules and procedures, displaying poor judgment concerning sensitive issues, insubordination in the form of failure to follow directives from her supervisor, and a lack of professionalism.

{¶ 12} LaChapelle's application for unemployment benefits was denied by the Department of Job and Family Services. LaChapelle appealed, and a hearing was held by an officer of the Unemployment Compensation Review Commission ("UCRC"). The hearing officer then determined that LaChapelle had not been fired for just cause, making her eligible for benefits. The Partnership appealed, and upon a review of the record, the UCRC reversed the hearing officer's decision, concluding that LaChapelle's employment had been terminated for just cause. The UCRC found that LaChapelle "displayed a disregard for the employer's policies" and was "unprofessional and insubordinate."

{¶ 13} The Lucas County Court of Common Pleas affirmed the UCRC's decision, concluding that it was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶ 14} LaChapelle raises two assignments of error:

{¶ 15} I. "The trial court erred in failing to rule that the denial by the Commission of LaChapelle's claim for unemployment benefits was unlawful, unreasonable, and against the manifest weight of the evidence."

{¶ 16} II. "The trial court erred when it overlooked the Hearing Officer's findings of fact and decision."

{¶ 17} Our standard of review for just-cause determinations by the UCRC is identical to that of the trial court. *Tzangas, Plakas & Mannos v. Admr., Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 696, 653 N.E.2d 1207. We may reverse only if we find that the UCRC's conclusion was unlawful, unreasonable, or against the manifest weight of the evidence. Id. We must

focus on the UCRC's decision rather than the trial court's. *Carter v. Univ. of Toledo,* 6th Dist. No. L–07–1260, 2008-Ohio-1958, 2008 WL 1837254, ¶ 13. The appellate court also has the power to remand a case to the agency to make a new determination. *AAA Northwest Ohio v. Dir. of Job & Family Servs.,* 6th Dist. No. L–02–1127, 2002-Ohio-7311, 2002 WL 31888236, ¶ 18. We keep in mind that the Unemployment Compensation Act is to be liberally construed in favor of beneficiaries. R.C. 4141.46. See also *Baker v. Ohio Dept. of Job & Family Servs.,* 6th Dist. No. L–06–1198, 2007-Ohio-743, 2007 WL 549574, ¶ 12.

{¶ 18} An employee is ineligible for unemployment compensation benefits if she was terminated for just cause. R.C. 4141.29(D)(2)(a). "Just cause" is "conduct that would lead a person of ordinary intelligence to conclude the surrounding circumstances justified the employee's discharge." *Carter v. Univ. of Toledo,* 2008-Ohio-1958, 2008 WL 1837254, ¶ 10. When an employee, by her actions, demonstrates an unreasonable disregard for her employer's best interest, there is just cause for her discharge. *Kiikka v. Admr., Bur. of Emp. Servs.* (1985), 21 Ohio App.3d 168, 21 OBR 178, 486 N.E.2d 1233, paragraph two of the syllabus. Whether the employee technically violated some company rule is not the critical issue for determining whether there was just cause in the context of unemployment compensation. Id. See also *Binger v. Whirlpool Corp.* (1996), 110 Ohio App.3d 583, 590, 674 N.E.2d 1232.

{¶ 19} A just-cause determination cannot be based on a reason never stated by the employer as a justification for discharge. *Provost v. J.C. Penney Co., Inc.* (Sept. 30, 1998), 6th Dist. No. WD–98–021, citing *Campion v. Ohio Bur. of Emp. Servs.* (1990), 62 Ohio App.3d 897, 901, 577 N.E.2d 741. "Ohio law is clear that the [UCRC] cannot consider any other justifiable reason for the discharge than the reason or reasons stated by the employer or the actual reason for discharge." Id. Therefore, we must review each of the reasons given by the employer for the termination and examine the record allegedly supporting those reasons for an evidentiary foundation.

{¶ 20} The UCRC found three reasons given by the Partnership's termination letter: a failure to follow company policies, insubordination, and unprofessionalism. Upon review, we find that LaChapelle's actions did not demonstrate an unreasonable disregard for the Partnership's best interest. Thus, a determination of just cause is against the manifest weight of the evidence.

{¶ 21} First, the fact that LaChapelle technically violated the Partnership's complaint policy is inconsequential for a determination of just cause in the context of unemployment benefits. *Kiikka* and its progeny have distinguished between termination for the kind of "cause" sufficient to end an employment contract and termination for "just cause" that can make an employee ineligible

for unemployment compensation. "[T]he violation of a work rule which may well justify the discharge of an employee * * * does not necessarily amount to misconduct sufficient to deny unemployment compensation benefits under the statute." *Adams v. Harding Mach. Co.* (1989), 56 Ohio App.3d 150, 155, 565 N.E.2d 858. Whether the employee violated a company rule is not determinative of unemployment eligibility. *Piazza v. Ohio Bur. of Emp. Servs.* (1991), 72 Ohio App.3d 353, 357, 594 N.E.2d 695, citing *Kiikka,* 21 Ohio App.3d at 169, 486 N.E.2d 1233.

{¶ 22} Pursuant to *Kiikka,* the test is whether the employee's actions demonstrated an unreasonable disregard for the employer's best interest. In *Piazza,* the *Kiikka* test was applied to a truck driver who was fired after being convicted of driving under the influence of alcohol. Even though it was not against any company policy, the court said that the conviction demonstrated an unreasonable disregard for his employer's best interest, thereby constituting just cause. Id. Similarly, in *Mayes v. Bd. of Review, Ohio Bur. of Emp. Serv.* (1986), 32 Ohio App.3d 68, 513 N.E.2d 818, a school bus driver was discharged after being convicted of driving while intoxicated. An Ohio statute requires that school bus drivers be insured, and the DWI conviction made her uninsurable. Though the driver had not violated any regulation of the board of education, the court found just cause because her conviction violated her employer's best interests. Id. at 69, 513 N.E.2d 818.

{¶ 23} The *Kiikka* test also applies in less common situations in which violation of a company policy or rule is not in disregard of the employer's best interest and, therefore, does not constitute just cause. Such was the case in *Jones v. Dir. of Job & Family Servs.,* 8th Dist. No. 88564, 2007-Ohio-3275, 2007 WL 1848805. In *Jones,* the employee used his administrative position at a small college to acquire and sell desk copies of textbooks for money that he allegedly used to help students in need but kept in his personal bank account. The college terminated his employment after a report indicated that he was selling books that had been ordered on the college's account for personal gain. However, since he had sold only desk copies, received at no expense to the college, his actions did not demonstrate an unreasonable disregard for his employer's best interest. Id. at ¶ 20, 2007 WL 1848805. Hence, even though the employee acted contrary to his superior's wishes, his actions were not contrary to the best interests of the college, and there was no just cause for his termination.

{¶ 24} Here, similarly, LaChapelle did not disregard her employer's interests. LaChapelle violated the Partnership's complaint procedure, but did so in order to expose what she, in good faith, believed was corruption within the company. This cannot be seen as unreasonable disregard for the Partnership.

{¶ 25} Appellee cites *Croom v. Admr., Bur. of Emp. Servs.* (June 15, 2001), 7th Dist. No. 00 C.A. 195, 2001 WL 674182, to suggest that the violation of any company rule could lead to a justified discharge. In *Croom,* however, the employee's infraction was a failure to clock in after a lunch break; the infraction was significant only because the employee had a history of time-card infractions. Further, the employee signed an agreement at the time of hiring that her employment was conditioned on there being no time-card violations.

{¶ 26} No evidence suggests that LaChapelle had a history of breaking rules. More important, the record shows that she acted in good faith and with the best interest of the Partnership as her motivation. As an accountant, part of her job was to report apparently suspicious financial activity to her chain of supervisors. The testimony reveals that Haddix agreed with this assessment. LaChapelle's violation of the grievance procedure, therefore, cannot justify her termination, because her actions did not demonstrate an unreasonable disregard for her employer's best interest.

{¶ 27} Second, with respect to the insubordination claim, it was unreasonable to find just cause in LaChapelle's failure to remove a bulky machine on the same business day she was told to. Because LaChapelle ultimately removed the machine as quickly as practicable, the conclusion of insubordination is unsupported. The timing of this incident also demonstrates the unreasonableness of the just-cause determination. LaChapelle was told only five days after reporting suspicious financial information to Haddix that she must remove a machine that had been in her office for at least ten days. Though the Partnership's insurer told Webb and Dzierzawski that the machine was a liability, LaChapelle suspected retaliation and was "walking on needles" at the time, as she told Haddix.

{¶ 28} Third, with respect to the claim of unprofessionalism, this case is distinct from cases in which courts have affirmed determinations of just cause after employees made disrespectful comments. For instance, appellee cites *Moore v. Comparison Market, Inc.,* 9th Dist. No. 23255, 2006-Ohio-6382, 2006 WL 3498598. In *Moore,* the employee twice referred to his supervisor as a "zero" and told him, "Stop wasting my time with these stupid e-mails." When confronted by a human resources manager about these comments, the employee yelled at her. Only then was he fired. LaChapelle did not approach the same line. Telling her supervisor "Come speak to me face to face," though inappropriate, does not show an unreasonable disregard for the Partnership's best interest. Thus, LaChapelle's unprofessional comment is not a basis for just cause.

{¶ 29} In liberally construing the Unemployment Compensation Act in favor of LaChapelle, as we must, we find that the UCRC's conclusion of just cause is

against the manifest weight of the evidence. Each of the three reasons for just cause is unsupported by the record.

{¶ 30} Accordingly, LaChapelle's first assignment of error is well taken. The second assignment of error is moot. The judgment of the Lucas County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

PIETRYKOWSKI and SINGER, JJ., concur.